IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAURA J.,[1] | ) |
| | ) Civil Action No. 7:22-cv-00402 |
| Plaintiff, | ) |
| v. | ) REPORT & RECOMMENDATION |
| | ) |
| MARTIN O'MALLEY,[2] | ) By: C. Kailani Memmer |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

Plaintiff Laura J. ("Laura") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381–1383f. Laura alleges that the Administrative Law Judge ("ALJ") erred by creating a faulty Residual Functional Capacity ("RFC") that did not adequately address Laura's severe medical conditions, and that the ALJ further erred by failing to fully explain in his analysis how he accommodated Laura's full range of medical limitations in the RFC. *See* ECF No. 18 at 5–6.

This case is before me on referral under 28 U.S.C. § 636(b)(1)(B), dated October 12, 2023, ECF No. 23. Laura requested oral argument in this case. *See* ECF No. 18. However, having considered the administrative record, ECF No. 10, the parties' filings, ECF Nos. 18, 21, and the applicable law, I conclude that oral argument would not aid in the decisional process. I

---

[1] Due to privacy concerns and because social security opinions often contain intensely personal medical information about claimants, I use only the first name and last initial of the claimant in such opinions.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

find that remand is appropriate as the ALJ failed to sufficiently articulate his findings with regard to particular limitations in the RFC.

Accordingly, I respectfully recommend **GRANTING** Laura's Motion for Summary Judgment, ECF No. 18; **DENYING** the Commissioner's Motion for Summary Judgment, ECF No. 20; **REVERSING** the Commissioner's decision denying Laura's DIB and SSI claims; **REMANDING** the matter under the fourth sentence of 42 U.S.C. § 405(g); and **DISMISSING** this case from the Court's active docket.

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Laura failed to demonstrate that he was disabled under the Act.³ *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its]

---

³ The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work; instead, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## CLAIM HISTORY

Laura filed for DIB on January 24, 2020, with an alleged onset date of July 13, 2012. R. 237–38. She applied for SSI on April 27, 2020, with an alleged onset date of July 13, 2012. R. 239–44. Laura telephonically appeared before ALJ Michael Dennard on September 15, 2021. R. 35–77. At that hearing, Laura requested to amend her alleged onset date to December 29, 2014, which the ALJ allowed. R. 43–44. ALJ Dennard issued an "Unfavorable Decision" in his decision analyzing Laura's claims under the familiar five-step process[4] on September 27, 2021, and so denied Laura's claim for benefits. R. 13–15. Laura appealed ALJ Dennard's decision to

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a *prima facie* case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimants age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

3

the Appeals Council on December 1, 2021. R. 230–31. The Appeals Council denied Laura's appeal on May 10, 2022. R. 1–3. Laura then timely filed her appeal to this Court pursuant to § 205(g) of the Social Security Act on July 13, 2022. ECF No. 2.

The ALJ found that Laura met the insured status requirements of the Social Security Act through September 30, 2016. R. 18. At the first step, the ALJ found that Laura had not engaged in substantial gainful activity since December 29, 2014, the alleged onset date. *Id.* At the second step, the ALJ found that Laura has the following severe impairments: adrenal gland disorder; history of Cushing's syndrome; obesity; pancreatitis; gastritis; fibromyalgia; chronic pain syndrome; diabetes; hypothyroidism; fatigue and attendant memory and concentration issues. R. 19.

As to the third step, the ALJ found that Laura's impairments, either individually or in combination, did not meet or equal a listed impairment. *Id.* The ALJ specifically considered listing 4.00 (arrhythmias or other cardiac dysfunction), 5.00 (thyroid-related weight loss), 11.00 (hypertensive cerebrovascular accidents), 11.14 (peripheral neuropathy), and 12.00 (cognitive limitations, mood disorders, and anxiety) R. 19–20. The ALJ found that with regard to Laura's mental impairments, she had moderate limitations in understanding, remembering, or applying information, as well as in concentrating, persisting, or maintaining pace. R. 21. The ALJ found Laura had a mild limitation in interacting with others and in adapting or managing oneself. *Id.*

. The ALJ concluded that Laura retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567, 416.967(b), except that Laura can occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; occasionally work at unprotected heights; can perform simple, routine tasks; perform simple

4

work-related decisions; and, in addition to normal breaks, will be off-task 5% of the day and absent one day per month. R. 22.

At the fourth step, the ALJ concluded that Laura is not able to perform any past relevant work. R. 28. At the fifth step, the ALJ determined that, considering Laura's age, education, work experience, and RFC, Laura was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as marker, garment sorter, or information clerk. R. 29. Therefore, the ALJ concluded, a finding of "not disabled" was appropriate. *Id.*

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Laura's request for review. R. 1–3.

## ANALYSIS

Laura alleges that the ALJ erred by creating a faulty Residual Functional Capacity ("RFC") that did not adequately address Laura's severe medical conditions, and that the ALJ further erred by failing to fully explain in his analysis how he accommodated Laura's full range of medical limitations in the RFC. *See* ECF No. 18 at 5–6.

### A. Medical History Overview

Laura is a former retail store manager and insurance clerk. R. 28. She has a high school education and was 39 years old on the alleged onset date. *Id.* The ALJ determined that Laura is unable to perform any past relevant work. *Id.*

Laura was diagnosed with Type 2 diabetes in 2011. R. 329, 381, 462. On November 13, 2014, Laura presented to Dr. James D. Bailey, M.D., an endocrinologist, for an evaluation of hyperthyroidism. R. 462. Laura complained of trouble swallowing, fatigue, insomnia, temperature intolerance, as well as dry skin and hair. *Id.* A thyroid ultrasound that same day

5

revealed multinodular goiter. R. 467. Laura returned to the care of Dr. Bailey with similar complaints and medical assessments on December 29, 2014 (R. 455); May 27, 2015 (R. 447); July 7, 2015 (R. 438); and July 22, 2015 (R. 433); September 2, 2015 (R. 429); October 7, 2015 (R. 421); February 8, 2016 (R. 409); May 12, 2016 (R. 401); August 15, 2016 (R. 395); November 18, 2016 (R. 388); January 5, 2017 (R. 380); February 23, 2017 (R. 371); May 31, 2017 (R. 362); August 31, 2017 (R. 357). Laura eventually underwent a thyroidectomy in July 2015. *See* R. 434.

On March 10, 2016, Laura presented to Dr. Henry Burgess, M.D. R. 348. At that visit, Laura was assessed by Dr. Burgess with chronic pain disorder and fibromyalgia. R. 349. As a result, Dr. Burgess referred Laura to pain management. *Id.* Laura returned to Dr. Burgess's care on June 3, 2016, with complaints of blurred vision. R. 342. Dr. Burgess assessed Laura with vision disturbances and referred her to Richard Johnson, an ophthalmologist. R. 343. Laura returned to Dr. Burgess's care on June 28, 2016, for a follow-up relating to her chronic pain. R. 339. Laura continued to complain of pain related to fibromyalgia, chronic cervical and lumbar disc disease, and recurrent pancreatitis. *Id.*

On June 7, 2016, Laura presented to Dr. Jonh J. Pineda-Bonilla, M.D., for pancreatitis and gallbladder issues. R. 329. Dr. Pineda-Bonilla noted that Laura complained of acute recurrent pancreatitis, as well as "constant diarrhea for years." R. 331. Dr. Pineda-Bonilla assessed Laura with acute recurrent pancreatitis, a history of cholecystectomy, right upper quadrant abdominal pain, and diarrhea, unspecified type, and ordered an endoscopy and colonoscopy. *Id.*

On August 19, 2016, Laura presented to Dr. Dushant Uppal, M.D., for evaluation of loose stools and concerns for recurrent pancreatitis. R. 517–18. Dr. Uppal noted that Laura

6

complained of continuing intervening periods of loose, foul-smelling stool followed by formed stools, with the most severe instances subjecting Laura to six watery stools daily for several days. R. 518.

On April 13, 2018, Laura presented to Shannon Snyder, P.A., because of chronic pancreatitis and abdominal pain. R. 799. Laura complained of diarrhea and abdominal pain. *Id.* At that time, Laura was prescribed medication for diarrhea. R. 800.

On October 12, 2018, Laura returned to the care of Shannon Snyder, P.A., for a follow-up. R. 793. At that time, Laura indicated that her abdominal pain and diarrhea significantly improved with the medication she was prescribed, and that she was typically having formed stools and no urgency. R. 793. Laura reaffirmed this improvement when she returned on April 8, 2019, when she reported that she'd had significant improvement in diarrhea on her medication. R. 787.

On May 28, 2019, Laura presented to Dr. Peter Duden, M.D., with complaints of fatigue, and elevated cortisol from obesity hypoventilation syndrome with concern for Cushing's syndrome. R. 511. Laura indicated that she had had increased cortisol levels with fatigue, weight gain, hirsutism, rashes, and general malaise for the past several years. *Id.*

On August 12, 2020, Laura returned to the care of Shannon Snyder, P.A., for pancreatitis. R. 780. At that time, Laura indicated that her chronic diarrhea had continued, reporting four to five bowel movements per day with constant watery or loose stools.

**B. Administrative Hearing – September 21, 2021**

Laura's hearing occurred by telephone due to the extraordinary circumstances presented by COVID-19. R. 37–38. Laura testified to her educational background and employment history. R. 49–51. Laura went on to testify about her medical issues, including her chronic diarrhea,

which causes her to be in the bathroom frequently throughout the day. R. 52. In addition, she testified to suffering from "stomach cramps, pain, nausea, [and] vomiting," as well as neuropathy, chronic pain, arthritis in the hands, feet, hips, and back. *Id.* Laura went on to testify that she was unable to climb stairs, was able to lift only a gallon of milk (though not repeatedly), and that she had to attend medical appointments three to four times per month. R. 65–67.

Vocational Expert Timothy Whitford described Laura's past work as a retail store manager as being skilled and light, and her past work as an insurance clerk was sedentary. R. 70. The Vocational Expert indicated that a hypothetical individual with the RFC the ALJ provided would be unable to return to the past work that Laura had done. R. 70–71. However, the Vocational Expert indicated that such a hypothetical individual would be able to perform the jobs of marker, garment sorter, or information clerk. R. 71.

### C. The ALJ erred when he failed to adequately explain in his analysis how he accommodated Laura's chronic diarrhea in the RFC by allowing for 5% off-task time and one day absent per month.

With regard to Laura's chronic diarrhea, the ALJ stated that, "[o]verall, the record indicates heightened difficulty with stools in 2016 during the Title II period, and increased gastrointestinal issues in the summer of 2020 before starting on medication during the Title XVI period, but not chronic, issues gastrointestinal issues [sic]," but that, "the light exertional level, limitation regarding heights, and off-task and absenteeism allowances accommodate her diarrhea and abdominal pain." R. 27.

During the hearing on September 21, 2021, when the ALJ questioned the Vocational Expert with a hypothetical utilizing the RFC that the ALJ had crafted, the Vocational Expert testified that "off task and absenteeism . . . are not covered under the [Dictionary of Occupational Titles] . . . [but] I find employers generally will tolerate a maximum off task rate of up to 10% which is short additional 5 or 6 minutes during the hour. . . [and] a maximum amount . . . of up to

8

1 day per month." R. 72. When the ALJ expanded the hypothetical individual to being 15% off-task and 2 days absent, the Vocational Expert testified that such limitations would be work preclusive. R. 73.

While the Commissioner states that, "Plaintiff failed to show that greater limitations were needed," ECF No. 21 at 6, it is the duty of this Court to review the record to determine whether substantial evidence supports the conclusions of the ALJ. *See Monroe v. Colvin*, 826 F.3d 176, 186 (4th Cir. 2016). In this case, the ALJ did find that Laura's chronic diarrhea would result in *some* off-task time; however, the ALJ never made specific findings about how Laura's diarrhea would result in only 5% off-task time, which amounts to roughly three minutes per hour. This failure to adequately explain was not a harmless one, as the testimony of the Vocational Expert indicated that employers generally accept a maximum of 10% off-task time, which is around five or six minutes per hour, and that 15% off-task time, which is around 9 minutes per hour, would be work preclusive. R. 72.

The difference of just a few minutes per hour, then, demarcates the line between a finding of "disabled" and a finding of Laura being "not disabled." Given the critical importance of such a difference, the ALJ should have engaged in a robust and thorough discussion of how he arrived at an RFC that allowed for only 5% off-task time; however, the ALJ did not do so. Instead, he recounted the medical evidence and simply concluded that, "[Laura's] bowel issues could also come [sic] some off-task time," where "some off-task time" somewhat arbitrarily amounts to 5% off-task time. R. 28.

It is not within the purview of this Court to "substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176. However, the ALJ is required to "build an accurate and logical bridge from the evidence to his conclusions." *Arakas v. Comm'r Soc. Sec. Admin.*,

9

983 F.3d 83, 95 (4th Cir. 2020). Here, the ALJ summarizes some of the evidence without citation to the record and then states conclusively that the RFC accommodates Laura's diarrhea and abdominal pain. R. 27. Fourth Circuit precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

An ALJ's obligation to "build an accurate and logical bridge" for his findings is just as important as whether his findings are supported by substantial evidence. *See Thomas v. Berryhill*, 9163 F.3d 307, 312 (4th Cir. 2019). The ALJ did not do so in this case, and so this Court is, unfortunately, left to guess at how the ALJ arrived at his RFC and the amount of off-task time Laura would require because of her documented medical conditions. As a result, remand is appropriate in this case. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

For the foregoing reasons, I respectfully recommend **GRANTING** Laura's Motion for Summary Judgment, ECF No. 18; **DENYING** the Commissioner's Motion for Summary Judgment, ECF No. 20; **REVERSING** the Commissioner's decision denying Laura's DIB and SSI claims; **REMANDING** the matter under the fourth sentence of 42 U.S.C. § 405(g); and **DISMISSING** this case from the Court's active docket.

## NOTICE TO PARTIES

The clerk is directed to transmit the record in this case to Robert S. Ballou, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party must serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or

10

specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 14, 2024

*C. Kailani Memmer*
C. Kailani Memmer
United States Magistrate Judge